NEW ENGLAND THEOSOPHICAL CORPORATION *vs.* BOARD OF ASSESSORS OF THE CITY OF BOSTON.

SAME *vs.* SAME.

Suffolk.    January 19, 1898. — October 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*" Literary, Benevolent, Charitable, or Scientific Institution " — Exemption from Taxation.*

Where the paramount object of a corporation, organized under Pub. Sts. c. 115, is the dissemination of theosophical ideas, and the procuring of converts thereto, and everything else is subordinate, on an appeal to the Superior Court from the decision of the board of assessors, under St. 1890, c. 127, refusing an abate-ment of the petitioner's taxes, the finding of the judge that the petitioner is not a literary, benevolent, charitable, or scientific institution within the meaning of the Pub. Sts. c. 11, § 5, cl. 3, as amended by the St. of 1889, c. 465, will not be disturbed.

TWO PETITIONS for the abatement of taxes assessed upon the petitioner's land and building. Trial in the Superior Court, upon appeals, without a jury, before *Sheldon*, J., who found for the respondent, and, at the request of the parties, reported the cases for the determination of this court. If the ruling was cor-rect, judgment was to be entered for the respondent for its ex-penses and costs; otherwise, judgment was to be entered for abatement in accordance with the prayer of the petition. The facts appear in the opinion.

*G. D. Ayers*, for the petitioner.
*S. M. Child*, for the respondent.

LATHROP, J.   These are two proceedings under the St. of 1890, c. 127, for the abatement of taxes assessed as of May 1, 1894 and 1895, respectively, on a parcel of land on Mount Vernon Street in Boston.   The case comes before us on reports of the justice of the Superior Court, who heard the cases, and who found and ruled as follows: " I find that the witnesses at the hearing testified truthfully, and rule that on all the evidence I am not required to find that the real estate of the petitioner, or any part thereof, was exempt from taxation."   The reports state that the only witnesses at the trial were the petitioner's treasurer, called by the petitioner, and its president, who also acted as counsel, called by the defendant.   The reports further state that there was evidence tending to show certain facts, and give portions of the evidence of the two witnesses.   The judge has made no findings of fact, and we are left to gather the facts from the evidence, which is not a satisfactory way of having cases presented to us.   The question before us is whether, as matter of law, the justice of the court below was bound to abate the tax assessed in either or both of the years above mentioned.

The petitioner was organized in 1893, under the Pub. Sts. c. 115, and received under § 13 a certificate from the Secretary of the Commonwealth, in which the purposes of the corporation are thus set forth: " for the purpose of literary, benevolent, charitable, and scientific purposes; more particularly to assist the Theosophical Society in its three objects, (1) forming the nucleus of a Universal Brotherhood of Humanity, without distinction of race, creed, sex, caste, or color; (2) promoting the study of Aryan and other Eastern literatures, religions, and sciences, and demonstrating their importance; (3) investigating unexplained laws of nature and the psychical powers latent in man; for mutual improvement in religious and philosophical knowledge; in the furtherance of religious and philosophical opinions; for maintaining a library or libraries of theosophical and cognate books; for printing and publishing theosophical literature."   It is further declared in the certificate: " No person can become a member of this corporation without being a member of the Theosophical Society, which was founded in New York, November 17, 1875, and has now its headquarters in India."

After this certificate was obtained, the petitioner acquired title to the premises taxed. This is a lot of land with a building thereon, formerly a dwelling-house, containing about twenty rooms of good size. The reports state : " The evidence tended to show that the work carried on by the corporation and the branch organizations and individuals who assisted the corporation was of a very general character, corresponding to the objects named in the charter, and consisting of editing the 'Theosophical News,' sending out press reports and articles to various papers by means of the ' Press Bureau ' of the New England Committee for theosophical work ; . . . that several branch organizations, engaged in various departments of the same work described in the purposes of the main corporation as shown by the charter, occupied various rooms in said building, some of whom subscribed a certain amount weekly to the support of the parent corporation, the petitioner." One room, in 1894, was occupied by a newspaper reporter, who worked for his newspaper at night and slept during the day, and when he was not asleep did some work for the petitioner, in the way of writing and addressing letters. A large number of other rooms were let to various theosophical workers, and they respectively paid a small rental for the same in proportion to their respective means, some of these being engaged in other occupations during the day. In 1894, a man and his wife occupied one of the rooms. On May 1, 1895, the wife, who was a member of the corporation, was temporarily in Europe, and the man, who was not a member, occupied the room and continued to occupy it.

The petitioner contends that the evidence shows that the corporation was a " literary, benevolent, charitable, and scientific institution," and so exempt from taxation under the Pub. Sts. c. 11, § 5, cl. 3, as amended by the St. of 1889, c. 465.

We see no ground upon which it can be said that the judge was bound to hold that the petitioner was either a benevolent or a charitable institution. The word " benevolent " may include purposes which may be deemed charitable by a court of equity, and it may also include " acts dictated by kindness, good will, or a disposition to do good, the objects of which have no relation to the promotion of education, learning, or religion, the relief of the needy, the sick, or the afflicted, the support of public works,

or the relief of public burdens, and cannot be deemed charitable in the technical and legal sense." *Chamberlain* v. *Stearns*, 111 Mass. 267.   See also *Massachusetts Society for the Prevention of Cruelty to Animals* v. *Boston*, 142 Mass. 24.

The word "charitable" refers to hospitals and other charitable institutions for the relief of the poor or the sick.   The reason of this exemption is that they render a service to the public, and so relieve the State or municipality from expense.   See Cooley on Taxation, (2d ed.) 202.

The purpose of " forming the nucleus of a Universal Brotherhood of Humanity " is too indefinite an expression to enable us to say, on the evidence, that the judge was wrong in holding that the petitioner was not a benevolent or a charitable institution.

The judge was not bound to hold that this was a scientific institution.   While the term "scientific" may not be limited to the physical sciences, yet there is nothing in the evidence to show that there is any study or application of science, even in the broadest sense of the word, in theosophy.   But even if there is any connection between theosophy and any kind of science, it is only incidental to the study and promulgation of a system of speculative philosophy.   To make an institution scientific, it should be devoted either to the sciences generally, or to some department of science as a principal object, and not merely as an unimportant incident to its important objects.

The word "literary" has no technical legal meaning, and there is some difference of opinion as to what is meant in statutes exempting literary institutions or societies from taxation. In England it is held that a school for educating teachers organized under the St. 6 & 7 Vict. c. 36, is not a literary society. *Regina* v. *Pocock*, 8 Q. B. 729.   See also *Indianapolis* v. *McLean*, 8 Ind. 328; *Philadelphia* v. *Public Schools*, 170 Penn. St. 257; *Kendrick* v. *Farquhar*, 8 Ohio, 189.

In *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599, it was said by Chief Justice Chapman, in considering the exemption of the academy from taxation : " The academy of the plaintiffs is a literary and scientific institution duly incorporated, and the only questions that are raised in the case relate to the character of the property which the defendants have assessed."   The insti-

tution in this case was incorporated by the St. of 1823, c. 80, " for the purpose of promoting religion and morality, and for the education of youth in such of the liberal arts and sciences as the trustees for the time being shall direct."

In *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139, it was conceded that the plaintiff was one of the institutions exempt from taxation by the Pub. Sts. c. 11, § 5, cl. 3, and the court said that it was " very properly conceded." The institution in this case was organized, under the Pub. Sts. c. 115, for the " education of boys."

We have no occasion, however, to inquire whether a building owned by a corporation formed for the purposes of education is exempt from taxation, when a similar building used for the same purposes would not be if owned by private individuals, as we are of opinion that the judge was not bound to find that the petitioner is a literary institution within the meaning of the statute.

The paramount object of the petitioner is the dissemination of theosophical ideas, and the procuring of converts thereto. Everything else is subordinate. The fact that in furtherance of this object books are collected, instruction given, and literary work done, does not make the petitioner a literary institution. To hold otherwise would be to permit any seven men who believed in any particular theory on any subject to live free from taxation by forming a corporation, buying a house, living in it, editing a newspaper, and writing articles to other newspapers in favor of their views, with the hope of gaining converts. This is not, in our view, the intent of the Legislature.

According to the terms of the reports, judgment is to be entered in each case for the respondent for its expenses and costs.                    *So ordered.*