LEWIS PARKHURST & others, executors, *vs.* TREASURER & RECEIVER GENERAL & another.

Middlesex.    March 29, 1917. — September 13, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Charity. Tax, On legacies and successions. World Peace Foundation.*

A corporation organized under the laws of this Commonwealth "for the purpose of educating the people of all nations to a full knowledge of the waste and destructiveness of war and of preparation for war, its evil effects on present social conditions and on the well-being of future generations, and to promote international justice and the brotherhood of man; and generally by every practical means to promote peace and good will among all mankind," whose incorporators gave time and services without other reward than the hope of benefit to mankind, and no pecuniary profit being even remotely available to any members of the corporation, and whose work consisted chiefly in the publication of literature and the employment of speakers to promote the purposes of the corporation, tending in the direction of educating the world in the true principles of international order

as a cure for the waste of preparation for war and the horrors of waging war, is a charitable society or institution within the meaning of St. 1912, c. 678, § 1, and St. 1909, c. 490, Part I, § 5, and accordingly the passing of property to it by will is not subject to a legacy and succession tax.

Whether the passing of a gift by will to a corporation is subject to a legacy and succession tax, or whether it is exempt from such a tax as the passing of a gift to a charitable society or institution, depends on the purposes and work of the corporation at the time of the death of the testator, when his will took effect after it was proved, and subsequent acts of the corporation only can be material so far as they tend to show what the character of the corporation was at that time.

PETITION, filed in the Probate Court for the County of Middlesex on March 3, 1917, under St. 1909, c. 490, Part IV, § 20, by the executors of the will of Edwin Ginn, late of Winchester, to recover $52,958.04, that being the amount, determined by the Tax Commissioner, of a legacy and succession tax paid by the petitioners to the Treasurer and Receiver General and alleged to have been imposed unlawfully on the passing by the will of the testator of a devise and legacy to the World Peace Foundation, a corporation organized under the laws of this Commonwealth and alleged to be a charitable institution exempt from taxation.

The Probate Court made a decree that the tax was assessed without authority of law and was exacted wrongfully, and ordered that the entire tax so assessed should be abated. The Treasurer and Receiver General appealed, and filed the following objections to the decree: "1. The provision in the will of Edwin Ginn for the benefit of the World Peace Foundation is not a devise or bequest to or for the use of a charitable, educational or religious society or institution, the proprety of which is by the laws of this Commonwealth exempt from taxation, or for or upon trust for any charitable purpose to be carried out within this Commonwealth, within the meaning of the legacy and succession tax law. 2. The tax described in the petition was duly assessed in accordance with the provisions of the legacy and succession tax law, and the decree ordering its abatement was accordingly contrary to law."

The appeal came on to be heard before *Loring*, J., who at the request of the parties reserved the case, upon the pleadings and the transcript of the testimony taken in the Probate Court, for determination by the full court.

*W. H. Hitchcock*, Assistant Attorney General, for the respondents.

*F. W. Knowlton*, for the petitioners.

RUGG, C. J.  This is a petition to recover a tax levied by the tax commissioner upon a legacy given by Edwin Ginn for the benefit of the World Peace Foundation.  By St. 1912, c. 678, § 1, amending St. 1909, c. 490, Part IV, § 1, property is not subject to this tax which passes by will "to or for the use of charitable, educational, or religious societies or institutions, the property of which is by the laws of this Commonwealth exempt from taxation."  The statement of such exemptions, so far as here material, is in St. 1909, c. 490, Part I, § 5, as follows: "The following property . . . shall be exempted from taxation: — . . . Third, The personal property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated within this Commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated, and real estate purchased by them with the purpose of removal thereto, until such removal, but not for more than two years after such purchase.  Such real or personal property shall not be exempt if any of the income or profits of the business of such corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes."

Mr. Ginn by his will provided for a large annual payment to the World Peace Foundation, a corporation organized under the laws of this Commonwealth.  Its corporate purpose is declared in these words: "The corporation is constituted for the purpose of educating the people of all nations to a full knowledge of the waste and destructiveness of war and of preparation for war, its evil effects on present social conditions and on the well-being of future generations, and to promote international justice and the brotherhood of man; and generally by every practical means to promote peace and good will among all mankind."

The declaration of corporate purpose expresses one of the highest moral aspirations of the race.  It adopts almost the very words of the angel song on the night of the Nativity.  It reveals nothing on a close and technical analysis at all at variance with the lofty idealism of its general sentiments.  In a large sense its object is to bring all mankind under fraternal, educational and humanitarian influences.  The final establishment of universal peace among all the nations of the earth manifestly is an object of public charity.

The comprehensive definition in *Jackson* v. *Phillips,* 14 Allen, 539, at page 556, is this: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." It was said, also, in *Molly Varnum Chapter, D. A. R.* v. *Lowell,* 204 Mass. 487, at page 493: "Charitable institutions organized to administer trusts in aid of the general welfare, which are the outgrowth of the conditions of modern society," may be found to be valid charities. The avowed objects of this corporation come within these accepted definitions.

All the incorporators have devoted time, labor and service of great value to work of the corporation without material compensation, or other reward than the hope of benefit to mankind. There is no pecuniary profit even remotely available to any of the members of the corporation. *Massachusetts Society for the Prevention of Cruelty to Animals* v. *Boston,* 142 Mass. 24. There is an express decision in *Tappan* v. *Deblois,* 45 Maine, 122, to the effect that a bequest to promote peace is a charity. The World Peace Foundation in its statement of corporate purposes sets forth a strictly legal charity.

But it is contended that the nature of the work being conducted by the World Peace Foundation and its main actual activities stamp it as an organization striving for objects "opposed to the existing laws," and designed "to bring about changes in the laws or political institutions of the country," and that this cannot be held to be a charitable purpose within the rule formulated in the great case of *Jackson* v. *Phillips,* 14 Allen, 539, at page 555. The principle on which reliance is placed is settled. A bequest aimed at effecting a change in the existing laws and constitutions cannot be sustained as a charity. The "laws do not recognize the purpose of overthrowing or changing them, in whole or in part, as a charitable use." 14 Allen, at page 571. These words were used in applying that principle to a trust fund to be expended in aid of the passage of laws securing to women the right to vote and other political and business rights, and it was held that such a purpose

was not charitable but rather political. See also *Bowman* v. *Secular Society, Ltd.* [1917] 1 A. C. 406, 442.

The description of the work done by the corporation up to the beginning of the great war shows that it was all charitable in the accurate legal sense, and that it does not come within the inhibition of the principle just stated. It consisted chiefly in the publication of literature and the employment of speakers and writers of ability, widely respected for their character and attainments, to attempt to propagate an opinion among the peoples of earth in favor of the settlement of international disputes through some form of international tribunal and to cultivate a belief in the waste of warlike preparation, and in the practical wisdom of reductions in the armaments of nations, and in the education of children as well as of adults in the knowledge of peace and the superior advantages of peaceful solutions of international difficulties. It is not necessary to narrate in further detail the kind of work carried on by this corporation. The instrumentalities adopted in brief tended in the direction of educating the world in the true principles of international order as a cure for the waste of preparation for war and the horrors of waging war. The methods followed to attain this end were legitimate and were in harmony with the ideal which was the goal.

It cannot justly be said that the purpose was political, or the means other than educational. Efforts were not directed immediately to the change of existing laws, constitutions or governments. The general diffusion of intelligence upon the subjects taught well might result ultimately in a modification of governmental policies. A different kind of government would be demanded by a highly educated than by a densely ignorant body politic. A nation made up of individuals, each of whom believes and practises love of God and love of man, would be likely to pursue a diplomacy dissimilar to that of a nation whose subjects, as individuals, were actuated by selfishness, pride and greed. The Constitution of the Commonwealth declares that a constant adherence to the principles of piety and justice are essential to preserve the advantages of liberty and to maintain a free government and admonishes all legislatures and magistrates "to countenance and inculcate the principles of humanity and general benevolence." A conscientious following of these precepts by all people would re-

sult in the most enlightened government and wise and just laws perhaps differing in substantial part from those now prevailing, yet gifts to promote these ends would not come under the prohibition of the rule against gifts to change existing laws.

The aim of this corporation as manifested by the means it employed was to nourish a public sentiment and to develop a moral influence among all the people in favor of peace and against war. Ethical and religious sentiments, as well as social and economic motives, were or might properly be appealed to in order to attain this end.

The case at bar stands in this respect on the same footing as the charitable gift to secure the abolition of human slavery and to benefit fugitive slaves who might from time to time escape from the slaveholding States of the Union, both upheld as valid charities, in *Jackson* v. *Phillips*, 14 Allen, 539.

The vote passed in July, 1915, approving the general principles and policy adopted by the League to enforce Peace in Philadelphia in June, 1915, and instructing the directors and representatives of the foundation to support such principles and policy in its name, standing by itself does not justify the levy of the tax. It does not appear that this vote necessarily means or has been interpreted by the World Peace Foundation to mean that its resources are to be devoted to the exposition of that particular doctrine. It might be that a common end might be sought by different means. But, however that may be, it is not necessary to discuss the meaning of the vote nor the character of those principles and that policy. The vote was not passed until nearly a year and a half after the death of the testator and proof of his will. The time, as of which must be determined the question whether the World Peace Foundation is a charity, is when the testator died and his will took effect. *Pierce* v. *Stevens*, 205 Mass. 219, at page 222. That was early in 1914. Whether a tax is due depends upon its purposes declared and the work done by it before that time. As has been shown these were distinctly and strictly charitable.

Decree to be entered that the excise has been illegally exacted, with costs. St. 1909, c. 490, Part III, § 71.

*So ordered.*