SOUTH LANCASTER ACADEMY vs. INHABITANTS OF LANCASTER.

Worcester.     September 25, 1922. — October 10, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Tax*, Abatement; Exemption: literary, benevolent, charitable and scientific insti-
tutions.     *Practice, Civil,* Proceedings for abatement of tax: commissioner.
*Corporation,* Literary, benevolent, charitable or scientific.

While findings of fact in the report of a commissioner to whom was referred under
G. L. c. 59, § 67, a petition for the abatement of a tax, stand upon the same
footing as findings of fact by an auditor and constitute evidence which is deter-
minative when the petition is heard by a judge under § 65 unless either in the
report or outside of it there is evidence to control them, the statute does not
require that the judge in such circumstances should be controlled by a general
finding or by conclusions and inferences of fact drawn by the commissioner
from his findings.

Although a commissioner to whom, under St. 1909, c. 490, Part I, § 79, a petition
for the abatement of a tax assessed for the year 1918 upon South Lancaster
Academy was referred, made a general finding that the academy was a religious
institution, his subsidiary findings, taken as a whole, were *held* to be susceptible
of more than one conclusion upon the question, whether the academy was a
religious institution or was a literary, benevolent, charitable, or scientific in-
stitution under Part I, § 5, cl. 3 of the statute.

The report above described and other evidence upon which the petition was heard
by a judge of the Superior Court were *held* to warrant a finding that, while one
of the purposes of the academy's incorporation was that of religious training,
its paramount and dominant purpose was the education of boys and girls to
prepare them for a business or calling so that they might become useful and
valuable members of society, and that it was a literary, benevolent, charitable
and scientific institution.

Neither the fact that Bible teaching and religious instruction were made a per-
manent feature in the course of study at the academy above described, nor the
fact that it was a denominational school prevented a finding that it was entitled
to the exemption from taxation given by St. 1909, c. 490, Part I, § 5, cl. 3 (see
now G. L. c. 59, § 5, cl. 3).

The mere fact, that the academy above described sold milk and vegetables pro-
duced on its property and not needed for use in the school, did not as a matter
of law preclude it from the exemption sought.

The commissioner in the proceeding above described found that the principal of
the academy occupied his apartment in a house on the academy premises as a
private residence.    From the commissioner's subsidiary findings and other
evidence at the hearing by the judge of the Superior Court, it appeared that
the principal occupied five rooms in a cottage on the grounds of the academy
near the main hall; that the rest of the cottage was used for students' rooms;
that a portion of the principal's apartment was used as his office and that a
monthly deduction of $17 from his salary was made which did not more than

pay for heating and lighting the apartment; that the principal was required to live in the cottage to be in proximity to the students. *Held,* that the judge was warranted in reaching conclusions that the deduction from the principal's salary did not amount to the paying of rent and that no actual revenue as rent was received; that the cottage was occupied by an officer.of the academy in order to carry into effect the purpose for which the academy was incorporated and therefore that it was exempt from taxation.

PETITION, filed in the Superior Court on April 15, 1919, for the abatement of a tax of $1,092 assessed upon property of the petitioner by the assessors of taxes of the town of Lancaster for the year 1918.

In the Superior Court, the petition was referred to a commissioner, and, upon the filing of his report, was heard by *Wait,* J., without a jury, upon the commissioner's report and other evidence. The commissioner's report first was introduced in evidence. The respondent thereupon moved for judgment upon that report. The motion was denied, and the further evidence then was introduced by the petitioner. At the close of the petitioner's evidence, the respondent, without introducing further evidence, again moved for judgment for the respondent on the commissioner's report. The motion was denied.

Material findings by the commissioner and other evidence before the trial judge are described in the opinion. The judge found the facts to be as set out in the commissioner's report with the exception that, upon the evidence, the plaintiff was a literary, benevolent, charitable and scientific institution, that the purchase of the Blood, Burke, and Langen lots was for the purposes of the school, and that its use, so far as any income was concerned, was incidental to the purposes of the school; and he ordered a decree for the petitioner, declaring it entitled to the abatement sought. The respondent alleged exceptions.

*D. H. Dorr,* (*J. N. Welch* with him,) for the respondent.

*O. Storer,* (*A. T. Saunders* with him,) for the petitioner.

CROSBY, J. This is a petition brought under St. 1909, c. 490, Part I, § 77, for an abatement of taxes assessed upon the property of the petitioner by the assessors of the town of Lancaster for the year 1918. Before the petition was brought all necessary preliminary steps had been taken by the petitioner and the only issue between the parties is whether the property is exempt in whole or in part from taxation, and if exempt in part, to what extent.

The petitioner was incorporated under the laws of this Commonwealth on December 12, 1883, the purpose stated in its certificate of incorporation being "the establishment and maintenance of a school for the instruction of persons of both sexes in the Sciences and Holy Scriptures, and also to provide facilities for regular and systematic physical labor for the students." It is an institution founded and controlled by the Seventh Day Adventist denomination, and receives financial assistance therefrom.

The petitioner contends that it is a literary, benevolent, charitable and scientific institution, that the only real estate owned or occupied by it or its officers in the year 1918 was so owned and occupied for the purposes for which it was incorporated, and that it is therefore exempt from taxation under St. 1909, c. 490, Part I, § 5, cl. 3. The respondent contends that the petitioner is a religious institution and that its property is subject to taxation.

The case was referred to a commissioner appointed under Part I, § 79, of the statute. In a report containing many findings of fact, the commissioner concludes as follows: "On the foregoing facts and all the evidence I find that the school is maintained by the Seventh Day Adventists as one of their effective agencies in carrying out their general plan of fostering and spreading their religion, and, while they teach literary and scientific courses at the school as above set forth, that their dominant purpose in maintaining said school is religious, and that, in so far as it is a question of fact, the school is a religious institution."

The case was afterwards heard by a judge of the Superior Court on the report of the commissioner together with further evidence; he found the facts to be as set out in the report with the exception that, upon the evidence the petitioner is a literary, benevolent, charitable and scientific institution; that the purchase of the Blood, Burke and Langen lots was for the purposes of the school; and that their use, so far as any income is concerned, is incidental thereto. A decree was ordered declaring the petitioner entitled to the abatement sought.

The statute, § 79, provides that the report of the commissioner shall be *prima facie* evidence of the facts found by him. Such findings stand upon the same footing as the findings of an auditor, G. L. c. 221, § 56, and are entitled to the same weight and probative effect. *Prima facie* evidence is defined "to be evidence

which, standing alone and unexplained, would maintain the proposition and warrant the conclusion to support which it is introduced." *Emmons* v. *Westfield Bank*, 97 Mass. 230, 243. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527, 536.

The commissioner's report makes out a *prima facie* case and the findings must stand unless either in the report or outside of it there is evidence to control them. *Anderson* v. *Metropolitan Stock Exchange*, 191 Mass. 117, 121. *Fisher* v. *Doe*, 204 Mass. 34, 40. *Wakefield* v. *American Surety Co. of New York*, 209 Mass. 173, 176. *Title Guaranty & Surety Co.* v. *Fred T. Ley & Co. Inc.* 238 Mass. 113, 117. It is well settled, however, that the general finding of an auditor may be controlled by the particular facts and findings reported by him if the court or jury think a different inference ought to be drawn from them. The judge was not obliged as matter of law to find for the respondent in the case at bar; he was not required to adopt the conclusions of the commissioner; but on the facts stated in the report he was entitled to consider them, draw the proper inferences therefrom, and reach such conclusions as they would warrant. *Emerson* v. *Patch*, 129 Mass. 299. *Peaslee* v. *Ross*, 143 Mass. 275. *Livingston* v. *Hammond*, 162 Mass. 375. *Wirth* v. *Kuehn*, 191 Mass. 51, 53. *Druggists Circular, Inc.* v. *American Soda Fountain Co.* 240 Mass. 531.

On the facts found by the commissioner it appears that on April 1, 1918, the petitioner owned a tract of land in Lancaster, where it conducted a school; that there were buildings thereon appropriate for the school including an academy building, dormitories, a cottage, a barn and other buildings; that about one hundred and thirty-five acres of the land were used as a farm except that the Kennedy lot, so called, of about fifty acres, was taken and used by the federal government as a prisoners' camp, under a lease from the petitioner, for which rent was paid; that of the remaining eighty-five acres, fifteen were pasturage, and about seventy were tillage and used for the raising of vegetables and hay; that the Kennedy, Burke, Langen and Blood lots owned by the petitioner were included in the one hundred and thirty-five acres; that in the year 1918 vegetables were raised, and were consumed by the students and others living at the school except about one hundred bushels of potatoes, which were sold, and some other

vegetables, which were fed to animals on the farm; that during that year about two hundred and twenty-five quarts of milk a day were produced during the school year, about one hundred and seventy-five quarts of which were consumed by the students and others living at the school, and the surplus sold at retail to residents of Lancaster; that some of the students attending the school worked on the farm during the school year and through the summer vacation; that "The academy requires that every student shall do at least one hour of avocational work a day, and a student who works on the farm at least one hour a day is given credit for such hour as a part of his course, and is paid for any time exceeding one hour per day;" that in 1918 there were about two hundred and thirty-five students above, and about eighty-five in and below, the eighth grade; that more than one half of the students were girls, none of whom worked on the farm; that boys who worked on the farm were given instruction in agriculture. The commissioner further found that the principal purpose of the petitioner in holding the land was to produce enough vegetables and milk for consumption at the school, "and, because of the faith of the Seventh Day Adventists which requires that students have an opportunity to work, for the additional purpose of affording an opportunity for farm work for students;" that the land was sufficient for both uses; that the main object of purchasing the Blood, Burke and Langen lots was to build up and strengthen the farm in order to produce income which ultimately would go for the benefit of the school; that while an operating profit from the farm was shown during the years 1915, 1916, 1917 and 1918, the accounts by which such profits were shown do not include overhead charges for water, lighting, or any allowance for interest on money invested in the farm or personal property covered by the inventory; that "No part of the income or profits of the business of the corporation ever has been divided among stockholders or members, or applied to anything except to the running of the school, the academy's land, buildings, and equipment. The school never has been self supporting, has run at a deficit for many years, and in order to assist meeting past deficits and current expenditures appropriations have been made to the academy by the Atlantic Union Conference of Seventh Day Adventists, an ecclesiastical body, from which the academy received, in 1918,

$24,170.76;" that the ages of the pupils at the school range from five years upward, and none under fourteen are permitted to live in the dormitories; that the school year is thirty-six weeks, the course of instruction covers fourteen grades, beginning with those for children five or six years of age and ending with those from which students can enter college; that the study of the Bible is prominent in every grade and is required during the entire school year; that the school is open to persons of any faith provided they are of good moral character, do not disseminate atheistic ideas, and do not use tobacco; that there was no evidence that any considerable number of students not Seventh Day Adventists has attended the school; that there were students who later became missionaries or ministers of that faith, and others who became doctors, nurses, business men, secretaries and farmers.

Without further reciting in detail the many particular and subsidiary findings we are of opinion that, considering them as a whole, they were susceptible of more than one conclusion upon the question whether the academy was a religious, or a literary, benevolent, charitable and scientific institution.

The judge of the Superior Court was not bound, either upon the subsidiary findings of the commissioner or the additional evidence submitted to him, to find that it is a religious institution. He was warranted in holding that, while one of the purposes of the petitioner's incorporation is that of religious teaching, yet that its paramount and dominant purpose is the education of boys and girls to prepare them for a business or calling that they may become useful and valuable members of society; and that the academy is a literary, benevolent, charitable and scientific institution. *Wesleyan Academy* v. *Wilbraham,* 99 Mass. 599. *Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139. *Thayer Academy* v. *Braintree,* 232 Mass. 402.

The circumstance that Bible teaching and religious instruction are made a prominent feature in the course of study does not make the academy any less an educational institution; nor does the fact that it is a denominational school prevent a finding that it is exempt from taxation under the statute. *Wesleyan Academy* v. *Wilbraham, supra.* The provision of the statute under which exemption is claimed provides that the property shall not be exempt from taxation "if any of the income or profits . . . is used

or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes." St. 1909, c. 490, Part I, § 5, cl. 3. From this provision it is clear that the property of a literary, benevolent, charitable and scientific institution may be exempt from taxation even though in addition to conducting a school for the purpose of educating boys and girls some of its income or profits is used for imparting to them religious instruction. There is nothing in the decision in *New England Theosophical Corp.* v. *Assessors of Boston*, 172 Mass. 60, at variance with the conclusion reached in the case at bar. The circumstance that milk and vegetables not needed for use in the school were sold does not change the result. Such sales could be found to be merely incidental to a use for the purposes of the academy. It was said in *Mount Hermon Boys' School* v. *Gill, supra*, at page 149, "And if a farm is set apart and cultivated to supply food for a family or community, it does not cease to be used for that purpose because, in the economical management of it, there are certain products which cannot be utilized otherwise than by sale."

The finding of the judge that the purchase of the Blood, Burke and Langen lots was for the purposes of the school was fully warranted.

The principal of the school occupied five rooms in a cottage on the grounds of the institution near the main hall. The rest of the house was used for students to room in. A portion of the principal's apartment was used as his office, and a monthly deduction of $17 from his salary was made. Upon these facts the commissioner found that he occupied the apartment as a private residence. The principal was required to live in the cottage to be in proximity to the students; there was evidence that $17 a month did not more than pay for heating and lighting the rooms; it could have been found that such deduction did not amount to the paying of rent and that no actual revenue as rent was received; besides it could also have been found that the occupation of this cottage by the principal was essential to the orderly and efficient management of the school, and was so occupied by an officer of the petitioner in order to carry into effect the purposes for which the academy was incorporated. *Phillips Academy* v. *Andover*, 175 Mass. 118. Upon such a finding the cottage was exempt from taxation. *Thayer Academy* v. *Braintree, supra*, at page 408. The facts in the

present case are plainly distinguishable from those in *Williams College* v. *Williamstown,* 167 Mass. 505.

The exceptions to the denial of the motions for judgment for the respondent, made before and after the evidence submitted to the judge was concluded, must be overruled.

*So ordered.*