### ASSESSORS OF BOSTON *vs.* GARLAND SCHOOL OF HOME MAKING.

Suffolk.    January 8, 9, 1936. — January 25, 1937.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Tax*, Exemption. *Corporation*, Charitable. *Charity. Board of Tax Appeals. Words*, "Charitable," "Benevolent," "Literary," "Scientific."

Whether conclusions of fact and a general finding by the board of tax appeals upon an agreed statement of facts were warranted is a question of law reviewable by this court on appeal under G. L. (Ter. Ed.) c. 58A, § 13, as amended by St. 1933, c. 321, § 7.

Statement by FIELD, J., as to what constitute "literary, benevolent, charitable and scientific institutions" within G. L. (Ter. Ed.) c. 59, § 5, Third.

Facts respecting an institution which was incorporated for the purpose of "training young women in the principles of home making" and gave practical courses to that end, and which from substantial fees charged to its students supported itself without endowment or gifts and made profits which were devoted to capital improvements and to the reduction of the principal of mortgages on real estate owned and used by it for its corporate purposes, and none of whose income or profits properly could be or ever was divided among its members, warranted conclusions that it was not incorporated nor conducted for private profit and was an educational institution and a "literary, benevolent, charitable and scientific" institution within G. L. (Ter. Ed.) c. 59, § 5, Third, so that its real estate was exempt from local taxation.

The facts, that an educational institution supported itself without gifts or endowment through substantial tuition charges and, made profits which it used for capital improvements and to reduce the principal of mortgages on its real estate on which its activities were carried on, did not preclude findings that its occupation of its real estate was directly and dominantly to accomplish its corporate purposes, to which the making of profits was only incidental, and that the real estate was "owned and occupied by . . . [it] for the purposes for

which . . . [it was] incorporated" within G. L. (Ter. Ed.) c. 59, § 5, Third; nor did such facts require a finding that the income or profits were "used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes" within the meaning of that statute.

APPEAL, filed in the Supreme Judicial Court for the county of Suffolk on September 24, 1935, from a decision by the Board of Tax Appeals.

*L. H. Weinstein*, Assistant Corporation Counsel, for the board of assessors.

*L. S. Apsey*, for the taxpayer.

FIELD, J.   This is an appeal by the board of assessors of the city of Boston (herein called the assessors) from a deci‌sion of the board of tax appeals (herein called the board). G. L. (Ter. Ed.) c. 58A, § 13, as amended by St. 1933, c. 321, § 7.   The Garland School of Home Making (herein called the taxpayer) was assessed as the owner of certain parcels of land and the buildings thereon in said city as of April 1, 1932, and April 1, 1933.   It seasonably filed applications for abatement, which were not acted upon by the assessors within four months, and appealed to the board.   The board decided that the taxpayer was entitled to an abatement for the year 1932 in the amount of $5,143.95 and an abatement for the year 1933 in the amount of $2,952 — being the whole amounts of the taxes on those parcels for these years — because the real estate was exempt from taxation.   From this decision the assessors appealed to this court.

The ground on which the abatements were granted was that the real estate in question was exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, material parts of which are these: "The following property . . . shall be exempt from taxation: . . . Third, Personal property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated in the commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated, and real estate purchased by them with the purpose of removal thereto, until such removal, but not for more than two years after such purchase, except as follows: (a) If any of the

income or profits of the business of the institution or corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes, its property shall not be exempt." If the decision that the taxpayer was exempt was without error of law no further question requires consideration. This issue of law was raised in the proceedings before the board by various requests for rulings which were dealt with by the board and is brought before us by specific assignments of error. Discussion of those requests and assignments separately is not required.

The case was heard by the board on an "agreed statement of facts" and a "supplementary additional agreed statement of facts" — obviously as evidence and expressly providing that the board might "make inferences" therefrom — which are incorporated in the record on this appeal.

Facts found by the board bearing on the fundamental issue were these: The taxpayer "is a domestic corporation organized on February 18, 1913, under the provisions of R. L. c. 125 (now G. L. c. 180)." It "was incorporated 'for the purpose of training young women in the principles of home making.' Article VIII of the by-laws of said corporation provides as follows: 'All property acquired by gift, bequest or otherwise shall be devoted to the purposes of the School; and the Executive Committee is authorized in its discretion to accept and receive in the name of the Corporation all property given in trust or otherwise, in accordance with the provisions of Chapter 180 of the General Laws of the Commonwealth.' There was no evidence of a charitable gift to the school. It offers a one year and a two year course, the students taking the latter course being classified as juniors and seniors. The curriculum comprises the following subjects: General Psychology; Child Psychology; Child Observation and Practice; Family Relationships; Home Nursing; Significance of Play and Play Materials; Literature; Drama; Current Events; Public Questions and Parliamentary Procedure; Appreciation of Design; Interior Decoration; Music in the Home; Home Management; Economic Principles; Family Finance; Selection and Care of the

House; Home Cookery and Table Service; Quantity Cookery; Elementary Clothing; Advanced Clothing; Crafts; and supplementary lectures on related topics. A building at 409 Commonwealth Avenue (not involved in these petitions) houses the class rooms, laboratories and offices and is used exclusively for class room work, teaching and administration. The other three buildings, the subject matter of these appeals, are used as dormitories, dining and practice houses and are designated 'Home Houses.' They were purchased by the appellant in 1931 and 1932, subject to mortgages placed thereon. All resident students are required to live and take their meals at the houses, and of a total enrollment of 65 in the school year 1931–1932 and 68 in 1932–1933, 26 students lived at the houses each year. Each house is in charge of a teacher who resides there and who instructs the students living at the houses in the work of managing homes. Under her direction three of the students successively, for a period of two weeks, take over the entire operation of each house. One of the three acts as housekeeper, one as home maker and one as comptroller of the budget. Each house is on a strict budget and the students are required to keep track of all bills, to know exactly what the operation of each house costs, plan meals, order food, do some of the cooking, supervise the help and do a large part of the housework. In addition to the rooms set apart for the teacher and the students, one room is reserved for guests and one room for sick students. In the judgment of the managing officers the houses are occupied to the fullest extent possible in keeping with orderly and efficient fulfilment of the purposes of the corporation and were acquired and have been maintained because their use and operation are reasonably necessary for the accomplishment of the corporate purposes."

The gross income of the taxpayer for the year ending April 1, 1932, was $60,614.38, and for the year ending April 1, 1933, $64,451.83. The expenditures for said years respectively were $50,599.37 and $52,265.91, and the resulting net incomes, $10,015.01 and $12,185.92. "Tuition for non-residents is $550 a year for the one year course and $500 a year for the two year course; for resident students, the

tuition is $1,850 a year for one year students and $1,800 a year for two year students. No salaries are paid to members of the corporation other than teachers and employees. During the school year 1931–1932 there were 19 teachers receiving salaries ranging from $300 to $3,425; during the following year there were 20 teachers receiving salaries ranging from $300 to $3,500 a year. The total payroll of the teaching staff for 1931–1932 was $23,095, and in 1932–1933 $25,430.''

As conclusions of fact the board found that ''none of the income or profits is or ever has been divided among the members of the corporation or used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes . . . that the appellant is a literary and educational institution and that its real estate is occupied by it for the purposes for which it was incorporated.''

The parties agreed that the taxpayer ''moved into and occupied for the purposes for which it is incorporated'' the premises in question and another parcel not here involved, ''as and when acquired,'' in 1931 and 1932, that ''None of the buildings are used by any other persons or organizations than the . . . [taxpayer], or rented to outside interests for any purposes,'' that ''None of the income or profits of the corporation is or ever has been divided among the members, or used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes,'' that ''No salaries are paid to members of the corporation other than the teaching staff and employees of the School,'' that ''The surplus of income over expenditures for each of the . . . years was added to Capital Account through the purchase of new furniture and equipment needed for the purposes of the School; and in the year ending April 1, 1933, for payment of principal on account of mortgages on real estate in the sum of $2,250,'' and that the taxpayer's officers ''would testify that in their opinion these Home Houses were acquired and have been and are maintained because their use and operation is reasonably necessary for the fulfillment of the purposes of the corporation.'' The terms on which the taxpayer acquired title to the premises in question

are set out in a footnote.*   The other facts agreed need not be recited.   So far as here material they are the same as the facts above recited as found by the board — exclusive of those described as conclusions of fact — though stated in somewhat different form.   Except as herein appears, the findings described above as conclusions of fact were not matter of express agreement and were reached by way of inference.

Appeals from the board to this court are only "as to matters of law" and this court cannot "consider any issue of law which does not appear to have been raised in the proceedings before the board."   The decision of the board is "final as to findings of fact."   G. L. (Ter. Ed.) c. 58A, § 13, as amended.   Such findings cannot be reviewed by this court unless vitiated by error in an "issue of law" raised before the board.   But the question whether a finding of fact is warranted by the facts agreed is a matter of law.   See *Frati* v. *Jannini*, 226 Mass. 430, 432–433.   See also *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 166–167. Cases heard on evidence not reported in full are distinguishable.   See *Commissioner of Corporations & Taxation* v. *J. C. McCrory Co.* 280 Mass. 273, 278; *Revere* v. *Revere Construction Co.* 285 Mass. 243, 247.   Obviously the subsidiary findings were warranted.   The findings described herein as conclusions of fact, as well as the general finding for the taxpayer — which imports a finding of all facts necessary to support it not inconsistent with facts actually found, *Manzi* v. *Carlson*, 278 Mass. 267, 273 — are review-

---

* The taxpayer acquired title to two of the parcels of real estate by deeds recorded July 1, 1931.   One of these parcels was purchased for $22,500, of which $1,000 was paid in cash and the balance by a first mortgage of $15,000 for three years at five and a half per cent to a savings bank, and a second mortgage "to the vendor for $6500. at 6%, principal payable $500. on July 1, 1933, and $1000. on July 1st of each succeeding year, balance payable on July 1, 1936."   Another of these parcels was purchased for $23,000, of which $1,000 was paid in cash and the balance by a first mortgage for $22,000 to the vendor "with interest at 5½%, principal to be amortized by quarterly payments of $500. beginning July 1, 1932, and the balance payable October 1, 1935."   The third parcel was acquired by deed recorded January 23, 1932.   It was purchased for $22,000 by giving a first mortgage in this amount to the vendor "at 6% interest, payments on account of principal to be made $250. in one (1) year and $250. every three (3) months thereafter, the balance payable in three (3) years."

able in accordance with these principles. Such conclusions and general finding must stand so far as warranted by the facts agreed and not necessarily inconsistent. *Duralith Corp.* v. *Leonard*, 274 Mass. 397, 401.

The burden of establishing that the real estate in question was exempt from taxation rested upon the taxpayer. *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 257. The assessors contend that the burden has not been sustained. The taxpayer was "incorporated in the commonwealth." The assessors argue that the taxpayer has not proved (a) that it is within the class of corporations described in G. L. (Ter. Ed.) c. 59, § 5, Third, as "literary, benevolent, charitable and scientific institutions" (obviously it is not a temperance society), (b) that the real estate in question was "owned and occupied by . . . [it or its] officers for the purposes for which . . . [it is] incorporated," or (c) that none of the "income or profits of the business" of the taxpayer was "used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes." All these facts must be established to entitle the taxpayer to the exemption claimed. The conclusion that they have been established was warranted.

First. A finding was warranted that the taxpayer was within the class of corporations described in the statute as "literary, benevolent, charitable and scientific institutions."

The answer to the question "whether the institution is in its character literary, benevolent, charitable or scientific within the meaning of those words in the statutes" "will depend upon the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration" (*Little* v. *Newburyport*, 210 Mass. 414, 415), that is, "upon its purposes declared and the work done." *Parkhurst* v. *Treasurer & Receiver General*, 228 Mass. 196, 199–201. See also *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139, 148.

The only corporations falling within the class described by the words quoted are corporations which are "charitable" in the broad sense in which that word is used in the

law relating to public charities. It was said of the clause
of the statute containing those words in an earlier revision
(R. L. c. 12, § 5, Third, in *Molly Varnum Chapter, D. A. R.*
v. *Lowell*, 204 Mass. 487, 493, with citation of numerous
cases, that "the statute plainly exempts institutions which
a court of equity would hold to be within the provisions of
St. 43 Eliz. c. 4, and charitable institutions organized to
administer trusts in aid of the general welfare which are the
outgrowth of the conditions of modern society, and although
not named in the trusts found in this statute, are held to be
within its spirit and intent." This statement, however,
must be taken with the limitation, not important in the case
then under consideration nor applicable to the taxpayer,
"that it was the intention of the Legislature not to include
under a general exemption property devoted to uses which
by another clause of the section was given a special and more
limited exemption." *Milford* v. *County Commissioners*, 213
Mass. 162, 165–166. The words descriptive of exempt in-
stitutions are to be construed together. The word "benev-
olent" used in connection with the word "charitable" is
synonymous therewith. *Molly Varnum Chapter, D. A. R.*
v. *Lowell*, 204 Mass. 487, 492. And these words are not
restricted to relief of the poor or sick but, subject to the
limitation above stated, bring institutions of a general
charitable nature within the scope of the exemption.
*Massachusetts Society for the Prevention of Cruelty to Animals*
v. *Boston*, 142 Mass. 24. *Mount Hermon Boys' School* v.
*Gill*, 145 Mass. 139, 146. *Franklin Square House* v. *Boston*,
188 Mass. 409. *Molly Varnum Chapter, D. A. R.* v. *Lowell*,
204 Mass. 487, 493–494. *Little* v. *Newburyport*, 210 Mass.
414, 417. *Parkhurst* v. *Treasurer & Receiver General*, 228
Mass. 196, 198–199. *Springfield Young Men's Christian As-
sociation* v. *Assessors of Springfield*, 284 Mass. 1, 5. *Boston
Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass.
248, 253–255. Compare *New England Theosophical Corp.*
v. *Assessors of Boston*, 172 Mass. 60, 63. While the words
"literary" and "scientific" show that the exemption given
by the statute is not restricted to institutions having the
narrow charitable purpose of relief of the poor or sick,

they are to be interpreted, like the word "benevolent," in the light of their use in connection with the word "charitable" and do not extend the exemption to literary or scientific institutions which are not in the nature of public charities. This interpretation is in accord with the underlying reason of the exemption, that it is given in return for the performance of functions which benefit the public. See *Opinion of the Justices*, 195 Mass. 607, 608–609; *Davis* v. *Treasurer & Receiver General*, 208 Mass. 343, 345; *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 203; *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 255.

The statute does not in terms exempt educational institutions, though "educational" purposes are named specifically among the purposes for which income or profits of an institution within the exempted class may be used or appropriated without loss of the exemption. It is, however, settled that educational institutions of a public charitable nature are within the class of "literary, benevolent, charitable and scientific institutions" which are exempt from taxation even if the education given is not strictly "literary" or "scientific" within the ordinary meaning of these words. *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139, 146. *Parkhurst* v. *Treasurer & Receiver General*, 228 Mass. 196, 198–199. *South Lancaster Academy* v. *Lancaster*, 242 Mass. 553, 558.

Findings that the taxpayer "is a literary and educational institution" and within the class of "literary, benevolent, charitable and scientific institutions" were warranted if the requirement is met that the institution be a public charity. The stated purpose of the taxpayer's incorporation, "training young women in the principles of home making," is clearly educational (*Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139, 146, *South Lancaster Academy* v. *Lancaster*, 242 Mass. 553, 558, *School of Domestic Arts & Science* v. *Carr*, 322 Ill. 562), and this educational purpose reasonably may be thought to include some strictly literary elements. See *Emerson* v. *Milton Academy*, 185 Mass. 414, 415. Moreover, work done by the taxpayer could be found to be within the

scope of its stated corporate purpose, dominantly educational (see *Little* v. *Newburyport,* 210 Mass. 414, 415), and not merely incidental to some other dominant purpose. Compare *New England Theosophical Corp.* v. *Assessors of Boston,* 172 Mass. 60 (as explained in *Molly Varnum Chapter, D. A. R.* v. *Lowell,* 204 Mass. 487, 491); *Phi Beta Epsilon Corp.* v. *Boston,* 182 Mass. 457; *Boston Lodge Order of Elks* v. *Boston,* 217 Mass. 176.

An educational purpose without special reference to the poor is a charitable purpose (*Dexter* v. *Harvard College,* 176 Mass. 192, 194; see also *American Academy of Arts & Sciences* v. *Harvard College,* 12 Gray, 582, 589; *Bowditch* v. *Attorney General,* 241 Mass. 168, 176) if, like charitable purposes generally, it is not to be carried out for private profit (*Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 253–255) and is for the benefit of "the public at large or some part thereof, or an indefinite class of persons." *Old South Society in Boston* v. *Crocker,* 119 Mass. 1, 23. *Sherman* v. *Shaw,* 243 Mass. 257, 259.

The taxpayer was incorporated under a statute (R. L. c. 125, now G. L. [Ter. Ed.] c. 180) which authorized the incorporation of charitable and other corporations. It had no capital stock. There was no evidence that private ownership of property or private right to profits was provided for in any other way. On the other hand, the taxpayer's by-laws provided that all "property acquired by gift, bequest or otherwise shall be devoted to the purposes of the School." See G. L. (Ter. Ed.) c. 180, § 7. The conclusion was at least warranted that the taxpayer was not incorporated for private profit. *Charlesbank Homes* v. *Boston,* 218 Mass. 14, 15. Moreover, the facts agreed warranted a finding that it was not actually administered for private profit, unless such a finding is precluded by the fact that the corporation itself made a profit. According to these facts not only was distribution of income or profits among the members of the corporation precluded by its by-laws but, as expressly agreed, there was in fact no such distribution. And the conclusion was warranted that the taxpayer was not incorporated, nor its activities carried on, for any

other pecuniary benefit of its members.   See *Parkhurst* v. *Treasurer & Receiver General*, 228 Mass. 196, 199.   Compare *Newcomb* v. *Boston Protective Department*, 151 Mass. 215, 217–218.   Furthermore, the facts that the taxpayer's activities were carried on with profit to itself, and that such profit was used to increase its capital account through "the purchase of new furniture and equipment needed for the purposes of the School" and payments on account of principal of mortgages on the real estate used by the school did not require a finding that such activities were carried on for private profit nor, on that ground, preclude a finding that the taxpayer was a charitable institution.   *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 342, 343.   See *Williston Seminary* v. *County Commissioners*, 147 Mass. 427.   It could have been found that this profit was used for educational purposes within the scope of the taxpayer's corporate purpose, and that, unless the taxpayer was noncharitable on some other ground, the members of the corporation acquired no private interests in the property for which this profit was expended.

A serious question involved in this case is whether the beneficiaries of the institution, as it was administered, constituted such an indefinite class of persons as to render it a public charity.   Doubtless, in a broad sense, education of a few persons may be for the benefit of the public at large.   But the evidence in this case does not show such specific benefit resulting to the public at large or any part of it, other than students in the school, as would constitute the taxpayer a public charity.   In this respect the institution differs from the Boston Athenaeum, considered in *Minns* v. *Billings*, 183 Mass. 126, 130–132.   See also *Little* v. *Newburyport*, 210 Mass. 414, 417–418; *Newton Centre Woman's Club, Inc.* v. *Newton*, 258 Mass. 326.   Nevertheless, the persons — young women — to be specifically benefited by the taxpayer, according to its stated corporate purpose, clearly constitute an indefinite class of persons.   They would naturally change from year to year and from the agreed facts it could have been inferred that they actually did.   *Franklin Square House* v. *Boston*, 188 Mass. 409.   In this respect,

as in others, the case differs from *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248; see pages 255–256.

The assessors, however, contend that the school was not actually administered for the benefit of an indefinite class of persons on the ground that its benefits were limited to the rich and not shared by the poor.    It may be, as we need not decide, that an educational institution exclusively for the benefit of the rich is not a public charity.    See *Dexter* v. *Harvard College*, 176 Mass. 192, 194–195.    See also *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 341; *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 255–256.    The assessors' contention, however, is based on the facts that, so far as appears, none of the persons benefited by the taxpayer paid less than the full charge for tuition, that the charge in the case of each individual was substantial, and that such charges in the aggregate resulted in a profit to the taxpayer from the maintenance of the school.    The requirement of the payment of reasonable fees by those who receive the benefits of an institution does not necessarily render it noncharitable.    Such a requirement does not necessarily restrict the class of persons benefited so that it is not indefinite.    This is true even of institutions for the relief of persons to some extent in need of pecuniary assistance.    See *Gooch* v. *Association for Relief of Aged Indigent Females*, 109 Mass. 558, 567; *Franklin Square House* v. *Boston*, 188 Mass. 409; *Thornton* v. *Franklin Square House*, 200 Mass. 465; *Charlesbank Homes* v. *Boston*, 218 Mass. 14; *Springfield Young Men's Christian Association* v. *Assessors of Springfield*, 284 Mass. 1, 6.    It is particularly true of educational institutions which may be public charities without special reference to the poor.    *Dexter* v. *Harvard College*, 176 Mass. 192, 195. See also *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 254.    As matter of common knowledge, educational institutions not supported by taxation ordinarily charge fees for tuition, with or without board and lodging.    The fact that an educational institution receives without charge, or at reduced rates, students un-

able to pay full tuition has some tendency to show that it is·charitable in nature, but, even if it does not receive students under these conditions, such an institution may be a public charity if the class of persons benefited by it is indefinite.  Though the taxpayer's charge for tuition upon each student was substantial in amount it cannot be ruled as matter of law that for this reason the class of persons benefited was so restricted as not to be indefinite within the meaning of the law of public charities.  There well might be a large number of persons, many of whom would not ordinarily be regarded as rich, who would wish to avail themselves of the benefits of the taxpayer's institution upon the terms prescribed.

The assessors contend further that the taxpayer was not a "literary, benevolent, charitable . . . [or] scientific" institution within the meaning of the statute because, so far as appears, it has received no charitable gifts and has no endowment.  Ordinarily such an institution is dependent·for its maintenance, in part at least, on funds received by gift. And the fact that it has received gifts of money or other property has some tendency to show that it is charitable in nature.  See *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, 435.  However, the services and the exercise of the judgment of the members of such a corporation may be an important factor in carrying on its work.  See *Parkhurst* v. *Treasurer & Receiver General,* 228 Mass. 196, 199. If a corporation is able, by reason of its organization and the services and the exercise of the judgment of its members, without the aid of gifts, to maintain an educational institution and thereby to benefit directly an indefinite class of persons without pecuniary profit to the members of the corporation, such corporation is not the less a public charity. The fact that an institution is self-supporting — or even makes some profit for its own use for educational purposes — does not necessarily render it noncharitable.  See *New England Sanitarium* v. *Stoneham,* 205 Mass. 335, 342, 343. Even persons paying full charges for tuition, which in the aggregate are sufficient to support the institution, may derive benefits charitable in nature from such an institution

through its making educational advantages available to them, as a part of the public, for reasonable fees.   The express provision of the statute denying exemption to an institution otherwise within its terms if "any of the income or profits of the business of the institution . . . is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes" (G. L. [Ter. Ed.] c. 59, § 5, Third [a]) implies, at least, that the fact that it derives "income or profits" from carrying out directly its charitable purposes, which is used or appropriated for the described purposes, does not exclude the institution from the exempted class.   The case of *Needham* v. *Bowers*, 21 Q. B. D. 436, relied on by the assessors, is distinguishable.

Second.   A finding was warranted that the real estate in question was "owned and occupied by . . . [the taxpayer] for the purposes for which . . . [it is] incorporated."   Without question the taxpayer was the owner of such real estate for the purposes of taxation or exemption.   See G. L. (Ter. Ed.) c. 59, § 11.   The occupation of real estate by an institution which entitles it to exemption of such real estate is occupation directly for the charitable purposes for which it is incorporated and not occupation for profit even if such profit is used for such charitable purposes.   *Salem Lyceum* v. *Salem*, 154 Mass. 15.   *Williams College* v. *Williamstown*, 167 Mass. 505, 509.   *Old South Association in Boston* v. *Boston*, 212 Mass. 299, 305.   Whether or not the specific finding of the board that the taxpayer's real estate "is occupied by it for the purposes for which it was incorporated" means occupation directly for those purposes, a finding of such occupation is imported by the general finding for the taxpayer.   The parties agreed expressly that the taxpayer "moved into and occupied for the purposes for which it is incorporated," the premises in question "as and when acquired," that is, in the years 1931 and 1932.   This fact and the specific facts agreed as to the actual use of the premises clearly warranted a finding that these premises were occupied directly for the purposes for which the taxpayer is incorporated, unless the fact that a profit resulted from carrying on the school precluded such a finding.   Within the

bounds of reasonableness and good faith the taxpayer's officers and members could determine what uses of real estate would promote directly its corporate purposes. *Massachusetts General Hospital* v. *Somerville,* 101 Mass. 319, 322. *Emerson* v. *Milton Academy,* 185 Mass. 414, 415–418. It cannot be ruled as matter of law that this discretion was wrongly exercised.

There is no merit in the assessors' contention that the premises were not occupied for "literary" purposes. As already pointed out, it could have been found that the taxpayer's purposes as carried out were educational, even if only in part strictly "literary," and that the premises were actually occupied for those purposes.

Furthermore, the facts agreed with respect to the making of a profit and the use of such profit do not show necessarily that the real estate was not used directly for the taxpayer's corporate purposes. Though this profit, as the parties agreed, was added to capital account it could have been found to have been appropriated to the educational uses of the taxpayer in a manner not very different from the payment of operating expenses. We cannot say that it could not have been found that the dominant purpose of the taxpayer in occupying the real estate was to accomplish directly the taxpayer's corporate purposes, and that so far as the occupation of the premises directly for educational purposes resulted indirectly in profit to the taxpayer such result was incidental. See *Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139, 149; *Emerson* v. *Milton Academy,* 185 Mass. 414, 415; *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 256. Clearly the real estate was not occupied by any person or organization other than the taxpayer (see *Salem Lyceum* v. *Salem,* 154 Mass. 15, 17) or for purposes which, apart from the production of income, were wholly foreign to the taxpayer's corporate purposes. Moreover, as was said by Chief Justice Knowlton in *Emerson* v. *Milton Academy,* 185 Mass. 414, 415, "An occupation and use of real estate to produce income to be expended for the purposes for

which the institution was incorporated is not within the statute, while an occupation whose dominant purpose is directly to accomplish some one of the objects for which the corporation was established is within it. If incidentally there are results of the use which would not entitle the property to exemption, that is immaterial, so long as the dominant purpose of the occupation is within the statute." The statements in *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139, 148, and *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 343, relied on by the assessors, to the effect that occupation of real estate for the purpose of accumulating profits to maintain the institution in the future is not occupation directly for its corporate purposes, are not decisive of a case where, as here, it could be found that the real estate was occupied by the institution directly to accomplish its corporate purposes, though incidentally profit resulted and was used somewhat less directly for these purposes.

Third. A finding was warranted that none of the "income or profits of the business" of the taxpayer was "used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes." If the taxpayer was an educational institution of a public charitable nature, clearly it could have been found that "the purchase of new furniture and equipment needed for the purposes of the school" and payments on account of principal of mortgages on the real estate used by the school out of profits were uses or appropriations of such profits for educational purposes. The recognition by the express terms of the statute that there may be "profits of the business of the institution" implies that the uses of profits for purposes described in the statute, permissible without loss of exemption, are not limited to expenditures for current expenses.

This case is decided on the ground that the general finding of the board that the real estate in question was exempt from taxation was a permissible conclusion of fact from the facts agreed, not vitiated by error of law. Whether

a different conclusion of fact could have been reached without error of law need not be decided.  See *South Lancaster Academy* v. *Lancaster*, 242 Mass. 553, 558.

It follows that an order is to be entered granting abatement in the sum of $5,143.95 for the year 1932, and an order granting abatement in the amount of $2,952 for the year 1933.

*So ordered.*