ASSESSORS OF BOSTON *vs.* WORLD WIDE BROADCASTING
FOUNDATION OF MASSACHUSETTS, INC.

Suffolk.    December 6, 1944. — February 5, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Charity. Corporation,* Charitable corporation, By-laws. *Taxation,* Real estate tax: exemption; Appellate Tax Board: findings. *Error,* Whether error harmful. *Evidence,* Statements of counsel.

A finding by the Appellate Tax Board hearing a proceeding for abatement of a real estate tax disclosed no error where it appeared that the finding was based upon and warranted by an uncontradicted statement made by counsel for the taxpayer in response to an inquiry by counsel for the assessors in a colloquy between counsel and the board.

A ruling made by the Appellate Tax Board at the request of a taxpayer disclosed no prejudicial error, whether or not it was inconsistent with a denial of rulings requested by assessors, where it appeared that the right result was reached by the board.

The mere fact, that the by-laws of a corporate taxpayer contained no provision relating to dissolution and distribution of income and profits, did not require a ruling that the corporation had failed to sustain the burden resting upon it of proving that it was entitled to exemption from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third, where its charter contained no such provision and showed that its purposes were exclusively charitable: the silence of the by-laws on the subject of dissolution and distribution of income and profits was wholly consistent with the nature of the powers conferred by the charter.

A by-law of a corporation must not conflict with its charter.

APPEAL from a decision by the Appellate Tax Board.

*H. Freed,* Assistant Corporation Counsel, for the assessors.

*F. Adams,* (*B. L. Armstrong* with him,) for the taxpayer.

DOLAN, J. This is an appeal by the board of assessors of Boston, hereinafter referred to as the assessors, from a decision by the Appellate Tax Board abating a tax assessed for the year 1943 on certain real estate owned and occupied by the taxpayer.

The relevant facts found by the board follow: The taxpayer was duly incorporated under G. L. (Ter. Ed.) c. 180 on January 6, 1942, with the power to issue stock with a par value of $10 a share, of which it issued two hundred shares to the World Wide Broadcasting Foundation, Inc., a New York corporation, hereinafter referred to as the New York foundation, in exchange for personal property and cash. That corporation was the only shareholder on the taxing date. The corporate purposes of the taxpayer, which are identical with those of the New York foundation, are as follows: "To foster, cultivate and encourage the spirit of international understanding and co-operation and to promote the enlightenment of individuals throughout the world. To develop, produce, and broadcast programs of a cultural, educational, artistic or spiritual nature, and to arrange for the interchange of constructive radio programs throughout the world. To study, develop and disseminate radio programs which will enhance the cultivation of spiritual values and tend to promote the growth of individual character. To disseminate by radio, television, or other means, cultural, educational, artistic or spiritual ideas in support of the objects and purposes of the corporation; and to issue books, pamphlets and other printed matter to supplement the same. To purchase, own, acquire by gift, devise or bequest, to improve and to mortgage, pledge, lease, sell, assign, transfer or otherwise dispose of radio facilities and other real and personal property of every kind, class and description wherever the same may be situated, as may be necessary for the carrying out of the purposes of the corporation. To raise funds by voluntary contributions and subscriptions and to accept money and property of every kind and description by gift, devise or bequest, and to expend the same, or the income therefrom, for the purpose of carrying out the objects and purposes of the corporation

or any work in connection therewith which is 'deemed appropriate by the board of directors.   To invest and reinvest the funds of the corporation in such mortgages, bonds, stocks, notes or other securities as the board of directors may from time to time decide; to provide fellowships, endowments or scholarships in connection with the promotion and encouragement of international understanding and especially for the use of radio in connection therewith; to make such gifts or advances to such other foundations, committees or corporations as the board of directors shall from time to time deem worthy of support.   In general, to take all such action as may be necessary or incidental to the carrying out of the objects and purposes of the corporation."   The taxpayer's by-laws were not in evidence, but the parties agreed that they contained no provision relating to the distribution of profits or income.   The officers were a president, vice-president, treasurer, clerk and secretary. A board of directors controlled its affairs.   Both corporations are "nonprofit institutions."   The New York foundation was organized in 1935 with the main object of establishing a "world wide university of the air" for the dissemination of educational subjects over the radio, especially the short wave radio, particularly to foreign countries.   A grant of money from the Rockefeller Foundation assisted it in the beginning.   In 1936 it changed its headquarters to Boston and constructed a short wave radio station in Scituate known as WRUL, and courses of instruction were prepared and broadcast to radio listeners in various parts of the world.   Among the courses given was one in basic English intended primarily for people in South America.   When the taxpayer was incorporated, the New York foundation transferred title to all its equipment in Massachusetts to the taxpayer except that of the radio station at Scituate, and the latter assumed all the activities of the former, except the operation of WRUL, and the taxpayer continued the educational programs as conceived and developed by the New York foundation.   In June, 1942, the taxpayer bought the real estate in question located at 133 Commonwealth Avenue, Boston, with the intent that it should be-

come the center of the world-wide university of the air, remodelled it, and has occupied it for the purposes before described. In November, 1942, the government restricted foreign broadcasting, but the taxpayer continued to assist governmental agencies in preparing material for foreign consumption. It also continued to broadcast educational programs, and radio lectures by distinguished educators, authors, leaders in the industrial world and news commentators have been broadcast. The various programs have been prepared gratuitously by professors and instructors in local colleges. The taxpayer, being a nonprofit corporation, did not seek or receive commercial sponsorship or advertising. Its support came from contributions by interested individuals, radio listeners and philanthropic institutions. Among the latter were the Rockefeller Foundation and the Carnegie Endowment for International Peace. There have been no profits, and none of the income of the taxpayer has ever been distributed to its shareholder. The board further found on all the evidence that "the dominant activities of the . . . [taxpayer] were educational, literary and charitable and were conducted with the object of fostering and encouraging the spirit of international understanding and cooperation and to promote the enlightenment of individuals throughout the world, and that the real estate in question was owned and occupied by it for the purposes for which it was incorporated . . . [and] that none of its income or profits have ever been used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes."

The evidence is not reported, and hence the conclusions of the board, as well as the general finding for the taxpayer, which imports a finding of all facts necessary to support it not inconsistent with facts actually found, are reviewable in accordance with the principles set forth in *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 383–384, and cases cited. *Assessors of Boston* v. *Boston Pilots' Relief Society*, 311 Mass. 232, 235–236.

Summed up, the specifications of errors alleged by the assessors are in the main that the finding by the board

that the taxpayer is entitled to an abatement of the tax is erroneous as matter of law because the by-laws permit the dissolution of the corporation and the distribution of its income and profits, if any, to the shareholders, and hence that it does not possess the character of a perpetuity and is not a charity within the meaning of the exempting statute.

The assessors also specified error to the effect that the board's finding that there is nothing in the by-laws of the taxpayer relating to its dissolution or to the payment of income and profits, if any, to the shareholders was not warranted. This was a finding of fact which will not be reviewed except as error of law may appear. We discover no such error. It may be added that the evidence with respect to that subject matter is set out in the record, consisting of a colloquy between counsel for the parties and the board at which, in response to the inquiry of counsel for the assessors, counsel for the taxpayer stated without contradiction that the by-laws were in fact silent on the subject matter of dissolution and of payments of income and profits, if any, to shareholders. As matter of law, the board could consider that undisputed fact evolved from the statements of counsel and decide the issue accordingly, since it took the place of evidence. *Dwyer* v. *Dwyer*, 239 Mass. 188, 190. *Kane* v. *School Committee of Woburn, ante,* 436. The assessors also argue that a requested ruling of the taxpayer that was granted by the board was inconsistent with the denial of two of the assessors' requests for rulings. Without pausing to discuss the standing of requests for rulings in the present proceeding (see *Harrington* v. *Anderson,* 316 Mass. 187, 191–193), it is sufficient to say that, in the circumstances complained of, since a right result was reached, it will not be disturbed. *Bianco* v. *Lay,* 313 Mass. 444. *Epstein* v. *Boston Housing Authority, ante,* 297, 303.

We proceed to consider the main contention of the assessors which has already been described. It is the real issue in the case.

The assessors make no contention that the purposes

set forth in the charter of the taxpayer are not charitable within the meaning of the statute (G. L. [Ter. Ed.] c. 59, § 5, Third), nor that the real estate involved is not devoted by the taxpayer solely to the carrying out of those charitable purposes.  The assessors properly accept as settled that whether an institution is charitable within the meaning of that word in the statute depends upon the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration, *Little* v. *Newburyport,* 210 Mass. 414, 415, that is, upon its purposes declared and the work done.  *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 384.  *Assessors of Boston* v. *Boston Pilots' Relief Society,* 311 Mass. 232, 236–237. *Assessors of Boston* v. *Lamson,* 316 Mass. 166, 172, 173. The sole contention of the assessors is that the burden of proof rested upon the taxpayer to establish that the property in question was exempt under the governing statute, and that, as matter of law, it failed to sustain that burden because it failed to prove that it could not be dissolved and its income or profits, if any, distributed to its shareholders.  We do not sustain this contention.  The charter of the taxpayer contains no express provision relative to dissolution or distribution of income and profits.  Reading the charter, we are persuaded that in all its implications a profit-making institution was not contemplated by the grant of powers and the limitations placed thereon. The ultimate, decisive grant contained in the charter is, "In general, to take all such action as may be necessary or incidental to the carrying out of the objects and purposes of the corporation."  No other objects or purposes than those set forth in the charter could be engaged in validly by the taxpayer, and those objects and purposes are exclusively charitable in character.  The silence of the by-laws of the taxpayer with respect to its dissolution and distribution of its income and profits is wholly consistent with the nature of the powers conferred by the charter.  Any provision that it could act other than in furtherance of the objects and purposes defined by the

charter would be repugnant to the powers conferred therein and void. See *Kane* v. *School Committee of Woburn, ante,* 436, 438, and cases cited. "A by-law may regulate the exercise of a corporate power, but it cannot enlarge or alter the powers conferred by the charter or by statute. . . . .A by-law is a subordinate law. It must not conflict with law, constitutional, statutory, or common, and must not conflict with the constitution of the corporation as found in its charter." *Peck* v. *Elliott,* 79 Fed. 10, 13–14. *Bornstein* v. *District Grand Lodge No. 4, Independent Order B'nai B'rith,* 2 Cal. App. 624, 627. *Dempster Manuf. Co.* v. *Downs,* 126 Iowa, 80, 83. The by-laws involved in *Assessors of Boston* v. *Boston Pilots' Relief Society,* 311 Mass. 232, providing for the administration of the purposes for which the society was founded, were not in conflict with the terms of the act by which it was incorporated. See St. 1866, c. 91.

In our opinion the taxpayer has established that it is a charitable institution in purpose and in the work done, and that the real estate in question is owned and occupied by it solely in carrying out the charitable purposes for which it was incorporated. We are not called upon to decide what disposition would be required to be made of the property of the taxpayer should its purposes cease to be susceptible of execution according to their foundation. See, however, *Opinion of the Justices,* 237 Mass. 613, 617–618.

It follows that abatement must be granted in the amount of $1,435 with interest at the rate of four per cent per annum from September 29, 1943, the date of payment of the tax, together with the costs of this appeal. See St. 1939, c. 366, § 1.

*So ordered.*