McHugh, J.
On the present record, there is no doubt that Harvard Community Health Plan (“HCHP”) is a “charity.” HCHP was organized under G.L.c. 180. The purposes stated in its articles of organization are undeniably “charitable” as the term “charitable” has been commonly construed in the past and is commonly construed now.[1] HCHP has an exemption under §501(c) (3) of the Internal Revenue Code. The Commonwealth’s Attorney General regulates HCHP’s activities pursuant to G.L.c. 12, §8, not, at least on this record because of some self-selection by HCHP, but because the Attorney General has deemed it appropriate to do so.
To conclude that HCHP is a charity, however, is not, in and of itself, to answer the question this case presents, i.e., whether HCHP is entitled to the partial immunity provided by G.L.c. 231, §85K. On the contrary, the statute says that “[i]t shall not constitute a defense to any cause of action based on tort brought against a corporation . . . that said corporation ... is or at the time the cause of action arose was a charity.” Having ruled out immunity based on status, the statute then goes on to provide a limitation of liability based on the nature of the activity the “charity” was carrying out when the alleged tort occurred. In the words of the statute,
if the [alleged] tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation ... liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs. Notwithstanding any other provision of this section, the liability of charitable corporations . . . shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.
Application of c. 231, §85K thus turns, not on global definitions, but on a fact-specific analysis of the activity out of which the alleged tort arose.
Here, at first blush, and despite plaintiffs sometimes nearly apoplectic pejoratives, the activities from which the alleged tortious activities arose seem to be at the core of HCHP’s stated charitable purposes, i.e., provision of medical services to patients.[2] But the record also contains genuine issues of material fact regarding the extent to which HCHP provides medical services to patients almost exclusively for fees that exceed, at least in the aggregate, the cost of those services and regarding disposition of what appears to be a sizeable excess of annual revenues over annual service costs. See Plaintiffs Brief at 8-11 and associated record references.
In Harlow v. Chin, 405 Mass. 697, 715 (1989), the Supreme Judicial Court stated that, in dictum, “[i]f a hospital’s objective in treating a patient ... is merely to generate revenue, the hospital’s activity must be analyzed as ‘commercial’ rather than ‘charitable.’ ” In Harlow, however, the Court relied in part on Grueninger v. President & Fellows of Harvard College, 343 Mass. 338, 340 (1961), where the statement was not dictum. Moreover, the Court has held in other contexts that examination of the way in which an organization disposes of its net revenues is an important task in determining whether the organization’s activities are charitable or commercial. E.g., Harvard Community Health Plan, Inc. v. Board of Assessors of Cambridge, 384 Mass. 536, 541 (1981) (construing G.L.c. 59, §5, cl. 3rd, (a)); see New England Legal Foundation v. City of Boston, 423 Mass. 602, 611 (1996). See generally 4 A. Scott, Trusts 372.1 (3d ed. 1967) (“if the payment of salaries is a mere device for securing to the beneficial owners the profits which may accrue, the institution is not charitable”).
ORDER
In light of the foregoing, it is hereby ORDERED, that defendant’s motion for Summary Judgment should be, and it hereby is DENIED.

 In Harvard Community Health Plan, Inc. v. Board of Assessors of Cambridge, 384 Mass. 536, 541 (1981), the Court said this about those purposes:
[HCHP’s] stated primary purposes are to join with “the Medical School of Harvard University and its affiliated teaching hospitals ... to advance the development of *285 comprehensive health care and to promote medical education by formulating a program or programs of prepaid comprehensive health services for a subscribing population which will:
(a) Attempt to create effective and economic means of organizing and delivering health care; (b) Provide the students, faculties, and staffs of the Medical Institutions with an opportunity for studying and teaching comprehensive health care; and (c) Conduct social and clinical research concerning health needs and the effectiveness of health care." In furtherance of these purposes, HCHP proposed, among other things, to: provide patient care; engage in teaching and research; establish, operate and maintain medical service centers, clinics and such other facilities as may aid in the study, prevention, diagnosis, care or treatment of ailments and injuries.

 One can quibble, as plaintiff has, about whether provision of patient care is a means for HCHP to achieve its stated charitable purposes or is itself one of those purposes. See n. 1, supra. In view of the statutory text, however, that quibble is pointless.